UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY McGOWAN,

        Plaintiff,

v.

        Case Number 17-11599
        Honorable David M. Lawson
        Magistrate Judge Elizabeth A. Stafford

CHRISTOPHER YOUNG,

        Defendant.
_____/

## OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, GRANTING MOTION FOR SUMMARY JUDGMENT, DENYING MOTION TO AMEND COMPLAINT, AND DISMISSING COMPLAINT

Plaintiff Anthony McGowan, a Michigan prisoner, filed a *pro se* complaint against prison supervisor Christopher Young, alleging that Young violated his Eighth Amendment right to be free from cruel and unusual punishment when Young refused to provide him with a means of climbing into the top bunk in his prison cell. McGowan alleged that he fell when trying to access the bunk, injuring himself. The Court referred this case to Magistrate Judge Elizabeth Stafford for pretrial management. Thereafter, the defendant filed a motion styled as a motion to dismiss or for summary judgment. The plaintiff countered with a motion to amend his complaint. Judge Stafford evaluated the defendant's motion under the summary judgment rule, and filed a report on January 24, 2018 recommending that the defendant's motion be granted and the plaintiff's motion denied. The plaintiff filed timely objections, and the matter is before the Court for *de novo* review.

I.

On September 13, 2016, McGowan was transferred to the Michigan Department of Corrections's (MDOC) G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. At JCF,

McGowan was placed in the housing unit supervised by MDOC employee Christopher Young, an Assistant Resident Unit Supervisor (ARUS).

Upon arrival at JCF, McGowan was assigned to the top bunk of a bunk-bed. Since at least 2012, bunk-beds at JCF had not been equipped with ladders to assist prisoners getting into and out of the top bunk — an issue raised several times by prisoners at regular "Warden's Forum" meetings. Instead, JCF staff allowed prisoners to use chairs to help them into and out of top bunks, and at one meeting, JCF staff represented that they would look into installing braces to stabilize bunk frames. Neither McGowan nor Young were present at the meetings cited in the record, although the minutes apparently were shared with Assistant Resident Unit Supervisors.

Young testified by affidavit that he had no concerns for McGowan's safety getting into and out of the top bunk to which he was assigned, as McGowan stood six feet tall and the top bunk is approximately four feet from the ground.

On September 14, 2016, McGowan requested a chair or ladder to help him access his bunk. Young ordered 30 chairs, including one for McGowan, on September 15. Young denied McGowan's request to provide him with a chair in the interim, claiming that no chairs were available. McGowan filed two grievances with JCF, one on September 15 and one on September 20, both centered around Young's refusal to provide a temporary chair while waiting for the shipment of new chairs to arrive. Both of those grievances were rejected by JCF staff, the first because Young had already ordered new chairs, and the second because it was a duplicate of the first grievance. The chairs Young had ordered were delivered on September 27 and one was assigned to McGowan.

The same day the chairs were delivered (September 27), McGowan, attempting to get into his bunk, fell to the ground, injuring his back. McGowan subsequently reported severe back, hip, and leg pain and began a physical therapy regimen, which provided limited relief. MDOC healthcare staff ordered that McGowan be reassigned to a bottom bunk and be allowed to continue physical therapy through 2017. Although physical therapy helped temporarily to alleviate his pain, McGowan continued to report significant lower back, leg, and hip pain. Physical therapists reported that as of April 13, 2017, McGowan was "compliant with [physical therapy]," but his underlying condition did not improve.

On May 18, 2017, the plaintiff filed his *pro se* complaint alleging a violation of his Eighth Amendment "right to a safe living environment," which he asserts via 42 U.S.C. § 1983. The defendant responded with a motion to dismiss the complaint or for summary judgment. The plaintiff countered with a motion to amend his complaint, seeking to add an equal protection claim and enhance his damages prayer.

On January 24, 2018, the magistrate judge issued her report and recommendation that addressed the two pending motions. Applying the facts to the two-element test for Eighth Amendment violations, she concluded that the evidence did not show that Young was deliberately indifferent to McGowan's health or safety when he denied McGowan a chair to access his bunk. *First*, she found that Young's actions objectively did not amount to a deprivation of "a minimal civilized measure of life's necessities," taking into account McGowan's height relative to the bunk-bed and the absence of a health condition that limited McGowan's ability to access his bed. *Second*, she found no evidence of deliberate indifference by Young because he had acted on McGowan's

request for a chair and was not personally aware of the discussions on bunk safety issues held at the Warden's Forum.

Additionally, the magistrate judge concluded that Young successfully asserted qualified immunity. Distinguishing this case from *Brown v. Bargery*, 207 F.3d 863 (6th Cir. 2000), she found there is no precedent that clearly establishes that the particular conduct alleged here violates the Eighth Amendment.

The magistrate judge also recommended that the plaintiff's request to amend his complaint ought to be denied. She raised a technical flaw because the plaintiff failed to attach a proposed amended complaint. And she determined that the amendment would be futile, because there were no facts in the motion or the record that implied that McGowan was treated differently from anyone else in the MDOC system.

The plaintiff filed timely objections. The defendant did not file a response to the plaintiff's objections.

## II.

The filing of timely objections to a report and recommendation requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

The Court has reviewed the pleadings, the report and recommendation, and the plaintiff's three objections, and has made a *de novo* review of the record in light of the parties' submissions.

**First Objection**

McGowan argues that the magistrate judge erred when concluding that Young was not deliberately indifferent and insists that there is a question of fact as to whether McGowan informed Young of his need for a chair. To defeat a motion for summary judgment brought under Federal Rule of Civil Procedure 56, the party opposing the motion "must make an affirmative showing with proper evidence." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). That is done by designating specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A prison official's deprivation of an inmate's access to his bunk conceivably could amount to cruel and unusual punishment. The Supreme Court has held that prison conditions may be uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual

punishment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."). But "[t]he Amendment also imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Ibid.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). If the challenged condition is not part of a criminal penalty, then it must not amount to an "'unnecessary and wanton infliction of pain,'" lest it violate the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). What constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

Claims under the Cruel and Unusual Punishment Clause must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). The objective component requires a showing that the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). The conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

To satisfy the subjective component, the plaintiff must show that the official acted with a sufficiently culpable state of mind; that is, that the conduct was "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104–06. Under that standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id.* at 843-44. However, a prison official may escape liability if he shows that he in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, he acted reasonably under the circumstances. *See id.* at 844-45. "Deliberate indifference is characterized by obduracy or wantonness — it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"At the summary-judgment stage, 'the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Darrah v. Krisher*, 865 F.3d 361, 368 (6th Cir. 2017) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

As noted in the magistrate judge's report, several courts have addressed the issue of bunk-bed access and found no deprivation of a minimal civilized measure of life's necessities. *See*

*Connolly v. County of Suffolk*, 533 F. Supp. 2d 236, 241 (D. Mass. 2008) ("However unfortunate Connolly's accident, the failure of prison officials to equip his bunk bed with a ladder simply does not amount to a deprivation of 'a minimal civilized measure of life's necessities.'"); *Grushen v. Hedgpeth*, No. 12-1860, 2012 WL 2590390, at *1 (N.D. Cal. July 3, 2012) ("Requiring an able-bodied inmate to use a bunk bed does not deny him the minimal civilized measure of life's necessities."); *Robinett v. Correctional Training Facility*, No. 09-3845, 2010 WL 2867696, at *2 (N.D. Cal. July 20, 2010) ("[L]adderless bunk beds do not satisfy the objective prong for an Eighth Amendment violation."). The Court sees no reason to depart from those conclusions and similarly finds that the deprivation of a chair with which to access his top bunk, even on a temporary basis, did not pose a serious risk of harm to McGowan under the objective component.

McGowan apparently concentrates his argument on the subjective inquiry: whether Young knew of McGowan's difficulty and deliberately disregarded the risks attendant to him and other inmates. However, awareness of discomfort is not enough without some showing of substantial risk of harm. It is undisputed that McGowan requested a chair or ladder from Young on September 14, 2016, placing Young on notice of McGowan's need for assistance. Moreover, viewing the facts in a light most favorable to the plaintiff and contrary to the magistrate judge's finding, it can also plausibly be inferred that Young was aware of other inmates' complaints because the Warden's Forum minutes were circulated to the ARUSs. But even accepting all that, it is well established that a finding of deliberate indifference requires evidence of something more than negligence. *Reilly*, 680 F.3d at 624. As Young averred, there was no reason for him to perceive that McGowan faced a substantial risk of harm when considering his height relative to the top bunk. Further, there is nothing in the record that suggests McGowan was not "able-bodied," or that he experienced

extraordinary difficulty and previously injured himself climbing into bed. That Young promptly placed an order for chairs after McGowan complained likewise undermines a finding of "obduracy or wantonness." The Court agrees that denying McGowan a temporary chair did not rise to the level of deliberate indifference. *Farmer*, 511 U.S. at 844-45.

McGowan further argues that the magistrate judge improperly relied on *McCray v. Sherry*, No. 08-106, 2009 WL 2477299 (W.D. Mich. Aug. 11 2009), when concluding that there was no evidence that Young acted with deliberate indifference. He contends that Young knew McGowan needed a chair and that Young's decision to deny McGowan a temporary chair was a deliberate rather than negligent act. In *McCray*, the plaintiff sustained injuries to his lower back and arm when he attempted to access his top bunk without the assistance of a chair. *Id.*, at *1. The defendants, officers at the Straits Correctional Facility, prohibited McCray from keeping a chair in his cell and advised him that he would have to access his bunk "the best way he could." *Ibid.* As in this case, the issue of access to top bunks previously had been raised at the Warden's Forum. *Ibid.* In granting the defendants' motion for summary judgment on the plaintiff's Eighth Amendment claim, the court concluded that the defendants' actions, even taking into account the complaints raised at the Warden's Forum that predated the plaintiff's injuries, "constitute[d] no more than negligence." *Id.*, at *4. The same can be said here.

The magistrate judge correctly concluded that Young's actions did not deprive McGowan of a minimal civilized measure of life's necessities and did not amount to deliberate indifference. McGowan's first objection lacks merit.

**Second Objection**

McGowan next argues that the magistrate judge improperly determined that Young is entitled to qualified immunity. That objection need not detain the Court long, because overcoming the qualified immunity defense requires at least that the plaintiff demonstrate that he has a viable federal claim stemming from a violation of a constitutional right. *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (reiterating that once the qualified immunity defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established") (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)).

As noted above, the plaintiff has not shown that his Eighth Amendment rights were violated by Young's conduct, so qualified immunity — that is, immunizing government actors where their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) — need not even be considered.

**Third Objection**

The plaintiff concedes that his motion to file an amended complaint was defective because he failed to attach a proposed amended complaint. He has attached a proposed first amended complaint to his objection papers.

Although Federal Rule of Civil Procedure 15(a)(2) encourages courts to "freely give leave when justice so requires," amendments may be denied on the basis of . . . futility of the proposed new claim . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999); *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997). Sensibly, a court may deny the motion to amend if it concludes that the pleading as amended could not

withstand a motion to dismiss. That saves the parties and the court the expense of having to confront a claim doomed to failure from its outset. *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir.1989) (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986)).

The plaintiff's proposed amended complaint does not allege an Equal Protection violation and merely restates his Eighth Amendment claim. Because the plaintiff has not alleged any new facts, granting the plaintiff leave to file an amended complaint would be futile.

III.

The magistrate judge properly concluded that the plaintiff has not established facts that would support an Eighth Amendment claim. His requested amendment would be futile.

Accordingly, it is **ORDERED** that the plaintiff's objections to the report and recommendation [dkt. #21] are **OVERRULED**, the magistrate judge's report [dkt. #19] is **ADOPTED IN PART**, and the recommendation is **ADOPTED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt. #13] is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion to amend his complaint [dkt. #15] is **DENIED.**

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 15, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 15, 2018.

                                            s/Susan Pinkowski
                                            SUSAN PINKOWSKI